UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREG CHAVEZ and ORION AVIATION, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALLIANZ GLOBAL RISKS US INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:22-cv-00176-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are Defendant Allianz Global Risks US Insurance Company's (1) Motion for Summary Judgment, (2) Motion in Limine to Exclude Expert Testimony, (3) Motion to Strike, and (4) Plaintiffs' Motion to Amend to State a Claim for Punitive Damages. (Dkts. 26, at 32-34). The Court heard oral argument on the motions on April 12, 2024. For the reasons set forth below, the Court grants in part and denies in part the motion for summary judgment; denies the motion in limine without prejudice; denies the motion to strike as moot; and denies the motion to amend the complaint to add a claim for punitive damages.

## I. BACKGROUND

This case concerns an insurance dispute that arose from a plane crash. In April 2019, Plaintiff Greg Chavez was set to take off from Pullman, Washington in his 2006 Piper PA46-500T Meridian.[1] (Dkt. 32-4, ¶ 1; Dkt. 39, at 3). Shortly after becoming airborne, however, the aircraft lost power and crash-landed on its belly on the runway. (Dkt. 26-3, ¶ 2). While Chavez was

---

[1]    Plaintiff Orion Aviation, LLC owns the plane at issue, and Chavez is a member of Orion. (Dkt. 26-3, ¶ 4). The Court refers to Plaintiffs collectively as Chavez.

fortunate to walk away from the incident unharmed, his aircraft sustained extensive damage to its airframe, engine, and propeller. (Dkt. 32-4, ¶ 1; Dkt. 26-3, ¶ 3).

Chavez contacted the aircraft's insurer, Defendant Allianz Global Risks US Insurance Company, to report the damage to the aircraft. (Dkt. 39, at 3). Allianz assigned Stephen Heinz to work as the insurance adjustor on Chavez's claim as well as third-parties John Munoz of Crawford Global Technical Services and John Boetticher from McClarens Aviation. After assessing the damage to Chavez's aircraft, Allianz concluded the damage constituted a partial loss under the terms of the insurance policy and that the aircraft could ultimately be repaired. (Dkt. 32-4, ¶ 3).

Allianz informed Chavez that as the owner of the aircraft, he needed to select a facility to repair his plane. (*Id.*) Chavez expressed concern over being the one to select the repair facility because he had no experience with aircraft repair. (Dkt. 38-1, ¶ 6). Although Allianz insisted it could not recommend a repair facility, it provided a list of repair shops it believed had experience with heavy airframe repair. (Dkt. 28-4, at 1). Among the repair shops on the list were Straight Flight, Inc., and Beegles Aircraft Services, both of which were based in Colorado. (Dkt. 38-1, ¶ 10).

Chavez obtained quotes from both Straight Flight and Beegles. (*Id.*, ¶ 11). Straight Flight provided their final repair estimate to Chavez by email on October 5, 2019. (Dkt. 38-1, Ex. A at 1). In calculating its repair estimate, Straight Flight did not physically inspect Chavez's aircraft. (Dkt. 32-4, ¶ 6). Straight Flight's estimate provided Chavez would be personally responsible for $145,502 of the cost to repair the engine and the overall cost to repair the plane would be $648,550. (Dkt. 32-4, ¶ 7). The estimate also provided Chavez would need to personally deposit $145,000 for the engine repair before Straight Flight would begin work on the aircraft. (Dkt. 38-1, Ex. A at 2).

**MEMORANDUM DECISION AND ORDER - 2**

On October 10, 2019, Chavez's attorney informed Allianz that Chavez intended to have Straight Flight repair the aircraft. (Dkt. 32-4, ¶ 8). On October 14, Chavez emailed Straight Flight and Allianz, requesting an extension from Straight Flight on the deadline to accept Straight Flight's repair offer. (Dkt. 32-4, ¶ 9; Dkt. 38-1, Ex. B at 2). Chavez explained he needed more time to obtain assurances from Allianz that it would pay his deposit and that his insurance claim would not be limited by the repair estimate. (Dkt. 38-1, ¶ 11). According to Chavez, he ultimately did not receive satisfactory responses to his concerns from Allianz by the deadline to accept Straight Flight's offer on October 25.[2] (Dkt. 38-1, Ex. B at 1). As a result, Chavez informed Straight Flight he could not accept its repair offer on October 25, and Straight Flight responded it was no longer interested in repairing his aircraft. (*Id.*) Shortly thereafter, Chavez also concluded Beegles was not a viable option because Beegles required Chavez to ferry his aircraft to its shop in Colorado, which he apparently was unable to do. (*Id.*, ¶ 12).

In December 2019, Chavez decided to get a repair quote from a different aircraft repair facility, Steve's Aircraft, based in California, which was not included on the Allianz's list. (*Id.*, ¶ 13). Unlike Straight Flight and Beegles, Steve's Aircraft was not a Part 145 repair shop, meaning it was not federally certified. (Dkt. 32-4, ¶¶ 12, 22). Steve's Aircraft did, however, have some experience conducting heavy repairs on similar aircrafts to Chavez's plane. (Dkt. 40, ¶ 4).

Steve's Aircraft physically inspected Chavez's plane in providing its repair estimate. (Dkt. 40, ¶ 6). The initial estimate, which did not include the cost to repair the engine, totaled

---

[2]     The parties each suggest the other party is at fault for Chavez's failure to accept Straight Flight's repair offer. Chavez suggests Allianz did not address his legitimate concerns before the deadline to accept the offer on October 25, 2019. Allianz argues it provided answers to all of Chavez's questions to Chavez's then-attorney. Allianz also points to Straight Flight's concern that Chavez was slow in responding to its inquiries. Chavez explains any delay was, in part, because he was on vacation in Europe in October 2019.

$259,673 and included $43,605 in costs which Straight Flight had apparently missed. (Dkt. 32-4, ¶ 12; Dkt. 38-1, Ex. E). Allianz, through Munoz and Boetticher, told Chavez they were worried Steve's Aircraft's estimate was substantially higher than Beegles' estimate. Allianz, however, apparently never told Chavez not to use Steve's Aircraft to repair his plane and did not warn him he would not be reimbursed for the full cost of the work.[3] (Dkt. 38-1, ¶ 20). Chavez debated with Munoz and Boetticher whether using Steve's Aircraft would be more expensive than Beegles or Straight Flight. (Dkt. 28-7, at 2-4). And Chavez ultimately contracted with Steve's Aircraft to manage the repair of his plane. (Dkt. 32-4, ¶ 12).

In January 2020, Allianz offered to pay Chavez $572,319 in full settlement and final resolution of his insurance claim. (Dkt. 32-4, ¶ 14). This offer was largely based on Straight Flight's repair estimate. (*Id.*) Chavez rejected the offer. (*Id.*) Thereafter, Allianz issued Chavez its first of what would be three partial settlement payments. The first payment was issued in January 2020, for $325,052 to begin repair work on the plane's engine, which was mostly conducted by Standard Aero, a separate repair facility. (*Id.*, ¶ 15; Dkt. 28-4, at 14). For each insurance payment, Allianz required Chavez to sign a document entitled "Sworn Statement in Partial Proof of Loss." (Dkt. 38-1, ¶ 22). Under the terms of the document, Allianz's payments were offered to Chavez "in partial settlement for claims of loss or damage to the aircraft . . . ." (*Id.*, Ex. H at 1). In March 2020, Allianz issued its second partial settlement payment to Chavez in the amount of $159,257. (Dkt. 32-4, ¶ 17).

Around this same time, Steve's Aircraft increased its repair estimate to $304,906 and began work on Chavez's aircraft. (Dkt. 32-4, ¶ 16). Steve's Aircraft outsourced some of its repair work

---

[3]     Allianz disputes they never warned Chavez about using Steve's Aircraft. Allianz contends that it informed Chavez that Straight Flight was the "most suitable facility" to repair the aircraft and that the repair costs of Steve's Aircraft "may be seen as unreasonable." (Dkt. 32-4, ¶ 12). The Court construes the facts in favor of Chavez, the nonmoving party.

MEMORANDUM DECISION AND ORDER - 4

to third parties. (Dkt. 38-1, ¶ 21). As noted, Chavez also hired a separate aircraft repair contractor, Standard Aero, to repair the plane's engine. (Dkt. 28-21, at 4). Over the course of the repair work, Steve's Aircraft and its third-party subcontractors submitted progress billings to both Chavez and Allianz for review and payment. (*Id.*, ¶ 24). Each progress billing included an itemized breakdown of the expenses incurred and the work done by Steve's Aircraft in repairing Chavez's plane. (*Id.*) Steve's Aircraft sent its first progress billing in October 2020 for $248,658. After accounting for Chavez's initial deposit with Steve's Aircraft, a balance of $103,340 remained. (*Id.*) Steve's Aircraft also increased its total estimated repairs to $341,533 at this time as well. (Dkt. 28-10, at 3). In November 2020, Allianz issued its third and final insurance payment to Chavez for $103,340 to cover the remaining balance on the first progress billing from Steve's Aircraft. (*Id.*, ¶¶ 23, 26; Dkt. 28-4, at 14). This third insurance payment was, again, a "Partial Settlement" that was "in full settlement for all claims of loss or damage to the aircraft . . . ." (Dkt. 38-1, Ex. J at 1).

Repair work on Chavez's plane continued into 2021, and Steve's Aircraft provided progress billings to Allianz and Chavez during this time. (Dkt. 38-1, ¶ 28). Steve's Aircraft also notified Allianz it was revising its estimated repair cost a third time, this time anticipating that total repair costs would total approximately $400,000. (Dkt. 32-4, ¶ 21). In June 2021, Steve's Aircraft finished repairing Chavez's plane and provided its final progress billing to the parties. (Dkt. 38-1, Ex. L). Steve's Aircraft's repair costs totaled $389,274 with an outstanding balance due of $140,616. (*Id.*) In all, the cost to repair Chavez's plane totaled $802,493, with $413,219 related to the cost to repair the plane's engine. (Dkt. 28-4, at 14; Dkt. 38-1, Ex. N).

Chavez submitted the final bill from Steve's Aircraft with an outstanding balance of $140,616 to Allianz. Allianz refused to pay the remaining amount, however, and instead offered Chavez a partial payment of $54,583 in final settlement of his claim. This settlement offer was

based on Allianz's belief that it was not required under the insurance policy to pay for certain repairs to Chavez's plane that constituted betterment, including costs associated with wear and tear, a new battery, ferry insurance, the plane's bellows, a vector refund, and betterment to the plane's propeller. (Dkt. 32-4, ¶ 27). Allianz also disputed whether using Steve's Aircraft was the most reasonable repair facility, compared with other vendors like Straight Flight. (*Id.*)

On June 2, 2021, Chavez spoke with Heinz over the phone regarding the settlement offer and the various disputed repair costs. During the phone call, Heinz shouted at Chavez and told him he would have to litigate his insurance claim if he did not accept the settlement offer. (Dkt. 38-1, ¶ 34). Chavez ultimately rejected Allianz's offer, and subsequent attempts to settle the insurance claim failed, including a revised settlement offer made by Allianz for $55,941 in November 2021. (Dkt. 32-4, ¶¶ 28-33). As a result, Chavez paid the remaining balance owed to Steve's Aircraft out of his own pocket. To date, Allianz has paid $587,649 to Chavez by way of three partial settlement payments, and Chavez personally paid $214,844 of the total cost to repair his plane.

In April 2022, Chavez initiated this lawsuit against Allianz. (Dkt. 1). The complaint asserts two claims against Allianz under state law. First, the complaint asserts a claim for breach of contract, alleging Allianz violated the terms of the insurance policy by failing to pay for certain expenses related to the repair of his aircraft. Second, the complaint asserts a bad faith insurance claim, which alleges Allianz breached its duty of good faith that it owed to Chavez as its insured. After discovery, Chavez moved to amend his complaint to add a claim for punitive damages, and Allianz moved for summary judgment. (Dkts. 26, 32). Allianz has also moved in limine to exclude any undisclosed expert testimony offered by Chavez. (Dkt. 33).

## II.  LEGAL STANDARD

### A.      Motion in Limine

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). A motion in limine should not be used, however, to resolve factual disputes or weigh evidence. *C&E Servs., Inc., v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Further, rulings on motions in limine are provisional and are "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). As such, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *City of Pomona*, 866 F.3d at 1070; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

### B.      Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence is insufficient. *Id.* at 252. Rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.*

In deciding whether there is a genuine dispute of material fact, the court must view the facts in the light most favorable to the nonmoving party. *Id.* at 255; *Devereaux v. Abbey*, 263 F.3d

1070, 1074 (9th Cir. 2001) ("Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there any genuine issues of material fact and whether the district court correctly applied the relevant substantive law.") (citing *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000)). The court is prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

Under Rule 56(c)(1)(A), the nonmoving party asserting a fact is genuinely disputed must support that assertion by particularly citing to materials in the record. The opposing party, however, may object to the cited material if it "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). That a court may only consider admissible evidence in ruling on a summary judgment motion is well established. *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181-82 (9th Cir. 1988). But the court should sparingly grant motions in limine and only in those instances where the evidence is plainly inadmissible on all potential grounds. *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218-19 (D. Kan. 2007).

C.    **Punitive Damages**

Whether to allow a plaintiff to recover punitive damages on claims that state law governs is a substantive legal issue and, therefore, a question of state law. *See Windsor v. Guarantee Trust Life Ins. Co.*, 684 F. Supp. 630, 633 (D. Idaho 1988). To recover punitive damages under Idaho law, a "claimant must prove, by clear and convincing evidence, oppressive, fraudulent, malicious or outrageous conduct by the party against whom the claim for punitive damages is asserted." Idaho Code § 6-1604(1). In other words, this standard requires a claimant to establish the "intersection of two factors: a bad act and a bad state of mind." *Myers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 985 (Idaho 2004) (citation omitted). A bad act is "an extreme deviation from reasonable standards of conduct." *Id.* at 985 (citation omitted). A bad state of mind is "an extremely

harmful state of mind, whether that be termed malice, oppression, fraud or gross negligence; malice, oppression, wantonness; or simply deliberate or willful." *Id.* (citation omitted).

Idaho law prohibits a plaintiff from pleading a claim for punitive damages in his initial complaint. *See* I.C. § 6-6104(2). Instead, a plaintiff must amend its complaint to add punitive damages as a remedy. *Id.* The court shall grant the motion "if, after weighing the evidence presented, the court concludes that, the moving party has established . . . a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." *Id.*

The Idaho Supreme Court currently has before it a certified question from this Court regarding what standard district courts should employ when determining whether a claimant has shown a "reasonable likelihood" of proving facts at trial sufficient to support an award of punitive damages under section 6-1604(2). *See Davis v. Blast Props.*, No. 1:21-cv-00218-BLW, 2023 WL 1767311 (D. Idaho Feb. 3, 2023). Pending resolution of that question, courts in this district have presumed the inverse Rule 50 approach applies. *See, e.g., Groenig v. Safeco Ins. Co. of Am.*, No. 1:20-CV-00538-BLW, 2023 WL 6162937, at *9 (D. Idaho Sept. 21, 2023). Under the inverse Rule 50 approach to I.C. § 6-1604(2), "a court views all evidence in the movant's favor without assessing credibility or resolving factual disputes and asks whether a reasonable jury could award punitive damages." *Groenig*, No. 1:20-CV-00538-BLW, 2023 WL 6162937, at *9. In doing so, the court does not assess credibility or resolve factual disputes. *See Lambirth v. USAA Cas. Ins. Co.*, 667 F. Supp. 3d 1073, 1093 (D. Idaho 2023). Rather, the court only assesses whether a reasonable jury could find clear and convincing to support an award for punitive damages. *See id.*

## III.  ANALYSIS

### A.      Motion in Limine

In its motion in limine, Allianz requests the Court exclude any opinion testimony from Chavez, Steve Culbertson, or any other witness proffered by Chavez that constitutes expert testimony. Allianz specifically requests the Court exclude testimony regarding the calculations of the damages to the aircraft, the reasonableness of the repairs, and how the damages were calculated. According to Allianz, such matters necessarily require scientific, technical, or other specialized knowledge within the scope of Rule 702 of the Federal Rules of Evidence. Because Chavez has not disclosed any experts under Rule 26(a)(2) of the Federal Rules of Civil Procedure, Allianz suggests any opinion testimony regarding these matters is inadmissible.

Generally, witnesses may testify to matters for which they have personal knowledge. *See* Fed. R. Evid. 602. Opinion testimony, however, must satisfy additional requirements. *See* Fed. R. Evid. 701, 702. Lay opinion testimony is only admissible if it (1) is rationally based on the witness's perception, (2) helpful to clearly understanding the witness's testimony or to determining a fact at issue, and (3) not based on scientific, technical, or other specialized knowledge. Conversely, opinion testimony based on scientific, technical, or specialized knowledge must satisfy the reliability and disclosure requirements for expert testimony under Rule 702 and Rule 26(a)(2).

Importantly, expert testimony does not include opinion testimony that is based on "particularized knowledge" from a witness's experience and personal knowledge. *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment. Indeed, "lay witnesses may testify to 'particularized knowledge by virtue of [their] experience[s]' even if the subject matter is 'specialized or technical[,] because the testimony is based upon the layperson's personal

knowledge rather than on specialized knowledge within the scope of Rule 702.'" *See United States v. Losch*, 603 F. Supp. 3d 795, 798 (D. Ariz. 2022). The common example of lay opinion testimony based on particularized knowledge is a business owner testifying to lost profits. *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment. For this reason, "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." *Erhart v. Bofi Holdings, Inc.*, 445 F. Supp. 3d 831, 842 (S.D. Cal. 2020) (citing Fed. R. Evid. 701 advisory committee's note to 2000 amendment).

Here, Chavez has provided declarations from himself and Steve Culbertson, the owner of Steve's Aircraft. Each declaration largely consists of fact testimony based on Chavez's and Culbertson's personal knowledge and, therefore, is not opinion testimony. In fact, Chavez's declaration contains little, if any, opinion testimony. The portions of each declaration constituting fact testimony is admissible under Rule 602.

With that said, Culbertson's declaration includes some opinion testimony. For example, Culbertson opines, among other things, that Steve's Aircraft was "very experienced" in repairing Piper PA 46 airplanes; Steve's Aircraft did not exceed costs because of inexperience; cost overruns were the result of Standard Aero's work, which necessitated extra trips to Washington; and any company reinstalling the plane's engine would have had similar cost overruns as Steve's Aircraft. (Dkt. 31-3, ¶¶ 3, 6, 13, 21). To the extent Culbertson's opinion testimony is based on scientific, technical, or specialized knowledge, it is inadmissible because Culbertson has not been disclosed as an expert.

In particular, Culbertson's opinion that "any company reinstalling the engine would have had the same delays and had to visit the aircraft on at least two occasions because of the missing

fuel transducer and parts[,]" is based on specialized knowledge because it speculates as to the likely conduct of other aircraft repair companies. (Dkt. 31-3, ¶ 21). This testimony is likely expert testimony and is inadmissible because Culbertson has not been disclosed as a witness and is speculative. Other opinions offered by Culbertson, however, may be admissible as lay opinion testimony because they are founded on particularized knowledge from Culbertson's personal knowledge with Chavez's plane and the repair work Steve's Aircraft performed. For instance, Culbertson's reasoning for his repair estimate and for why his estimate was exceeded may be admissible testimony because it is based on Culbertson's own perception of events he personally witnessed.

Except as otherwise indicated, the Court reserves ruling on the admissibility of Chavez's and Culbertson's opinion testimony. Without assessing the testimony in the specific trial context, the Court cannot definitively say whether any opinion testimony from Chavez and Culbertson regarding the calculations of the damage to the aircraft, the reasonableness of the repairs, and how the damages were calculated is admissible. Accordingly, the Court denies Allianz's motion in limine without prejudice and reserves any ruling until objections are raised at trial.

### B.   Summary Judgment

#### 1.   Breach of Contract Claim

Chavez's breach of contract claim alleges Allianz violated the terms of the insurance policy by failing to pay the correct portion of the cost to repair Chavez's aircraft. Of the total $802,493 spent to repair the plane, Chavez acknowledges Allianz has already paid him $587,649 and is not responsible for another $71,471 of the repairs. (Dkt. 38-1, Ex. N). Chavez contends, however, that under the terms of the policy, Allianz is still responsible for the remaining $143,373, of which $140,616 is attributable to the final bill from Steve's Aircraft. (Dkt. 38-1, ¶ 38).

Allianz's motion for summary judgment argues Chavez's breach of contract claim fails for two reasons. First, Allianz contends it did not breach the insurance policy because it paid the total amount due to Chavez under the policy. Allianz argues the policy only required it to pay for the "least expensive and most reasonable means" to repair the plane, and according to Allianz, its expert's opinion establishes there is no genuine dispute of material fact as to whether it did so. Thus, according to Allianz, it has not underpaid Chavez.

Second, Allianz argues that even if a factual dispute exists regarding whether it did breach the insurance policy, summary judgment is still appropriate because the insurance policy precludes an insured from suing Allianz unless the parties have first completed an appraisal of the disputed loss as outlined in the insurance policy. Allianz argues that because Chavez did not seek an appraisal before initiating this lawsuit, Chavez's breach of contract claim is improper and should be dismissed or stayed to allow the parties to seek an appraisal under the policy.

The Court concludes neither of Allianz's arguments suffice to grant summary judgment. A genuine dispute of material fact remains as to whether Allianz paid the required amount under the insurance policy, and Allianz has waived any right to resolve this dispute through the policy's appraisal process by knowingly waiting until summary judgment to raise the issue.

> ### a.  *A genuine dispute of material fact exists as to the amount Allianz owed under the insurance policy.*

To establish a claim for breach a contract, a plaintiff must prove (1) the existence of the contract, (2) the breach of the contract, (3) the breach caused damages, and (4) the amount of damages. *See McCarthy Corp. v. Stark Inv. Grp.*, 489 P.3d 804, 815 (Idaho 2021). "A breach of contract occurs when there is a failure to perform a contractual duty." *Shawver v. Huckleberry Estates, L.L.C.*, 93 P.3d 685, 692 (Idaho 2004) (citation omitted). Here, Allianz does not dispute the insurance policy constituted a contract. Rather, Allianz only disputes whether it breached the

insurance policy by failing to pay the correct amount to Chavez. The issue, thus, is whether the $587,649 paid to Chavez by Allianz was sufficient under the terms of the insurance policy.

"When interpreting insurance policies, this Court applies the general rules of contract law subject to certain special canons of construction." *Clark v. Prudential Prop. & Cas. Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003) (citation omitted). "Beginning with the plain language of the insurance policy, the first step is to determine whether or not there is an ambiguity." *Id.* (citation omitted). "This determination is a question of law." *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005). "An insurance policy provision is ambiguous if it is reasonably subject to conflicting interpretations." *Id.* (internal quotation marks and citation omitted). "Where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used." *Clark*, 66 P.3d at 245.

The parties agree the following provision in the insurance policy governs the amount Allianz was required to pay in the event the aircraft sustained damage constituting a partial loss:

> COVERAGES F, G AND H -- Total Liability
> . . . .
> With respect to partial loss, the company may pay for the least expensive and most reasonable means to repair the aircraft or may pay for the loss in money, subject to any applicable deductible, as follows:
> > 1) If repairs are made by other than the Named Insured, the total of the:
> > > a) cost to repair the damaged property with material of like kind and quality (excluding any charges for overtime), plus
> > > b) cost of the least expensive and most reasonable method of transporting new and/or damaged parts and/or the damaged aircraft to the place of repair and the return of the repaired aircraft to the place where the loss occurred or the place where the aircraft is regularly based, whichever is nearer;
> > . . . .
> As available, the Company will pay for repair or replacement of like, kind and quality. The Company will not pay excess of like, kind and quality amounts for the cost of betterment.

(Dkt. 26-3, at 23) (emphasis omitted).

The Court interprets the plain language of this provision to be unambiguous. The provision prescribes two general methods by which Allianz may pay for a partial loss to the aircraft. Under the first option, Allianz "may pay for the least expensive and most reasonable means to repair the aircraft." Or, under the second option, Allianz "may pay for the loss in money." Payment under either option is subject to the requirements of subsection (1) because someone other than Chavez performed the repair. Under this subsection, any payment must include the cost to repair the damaged property with material of like kind and quality plus the least expensive and most reasonable method of transporting the damaged parts or aircraft to the place of repair and back. Lastly, payment under either option does not include repairs that constitute betterment.

Under the policy, Allianz could either pay Chavez (1) the least expensive and most reasonable means to repair his aircraft or (2) pay Chavez for the partial loss in money, with any payment subject to subsection (1) of the provision. Allianz does not dispute it did not pay Chavez under the second option. Accordingly, at issue is whether Allianz paid Chavez for the least expensive and most reasonable means to repair his aircraft.

Allianz contends it has already paid Chavez for the least expensive and most reasonable means to repair his plane. In support, Allianz relies chiefly on the opinion of its expert, James Irvin. (Dkt. 28-21). Based on his review of the repair estimates of Straight Flight, Beegles, and Steve's Aircraft, as well as the actual repair Steve's Aircraft and Standard Aero performed, Irvin opines Allianz should have only had to pay $572,806 to repair Chavez's plane. (*Id.* at 22). Allianz argues that because it has paid Chavez $587,649, it has actually paid him more than the least expensive and most reasonable means to repair the aircraft. Also, Allianz argues only expert testimony is admissible to prove what constitutes the least expensive and most reasonable means of repair because such a determination necessarily requires specialized knowledge. According to

Allianz, because Irvin's is the only expert opinion in the record, no genuine dispute of material fact exists whether Allianz breached the insurance policy.

The Court disagrees. As discussed above, expert testimony is only necessary if the fact at issue requires "scientific, technical, or other specialized knowledge" to understand. Fed. R. Evid. 701, 702. Here, the fact at issue is what constituted "the least expensive and most reasonable means" to repair Chavez's plane. Admittedly, what constitutes a reasonable means to repair an aircraft may include considerations requiring specialized knowledge. For example, an aircraft expert's testimony may be highly probative of whether Allianz paid for the least expensive and most reasonable means of repair. Numerous, nonspecialized considerations, however, also bear on that determination. For example, specialized knowledge is not necessary to understand how expensive certain repairs were, whether Straight Flight or Beegles were viable repair options based on basic logistics, and if Allianz ever warned Chavez against choosing Steve's Aircraft for repairs. All these considerations may be relevant to whether Allianz paid for the least expensive and most reasonable means of repair, and although expert testimony may be helpful or even sufficient to resolving these factual issues, that Chavez has not disclosed a Rule 702 expert testimony does not foreclose his case.

Indeed, nonexpert evidence in the record raises genuine factual issues whether Allianz paid the required amount under the policy. For example, when viewing the evidence in Chavez's favor, Steve's Aircraft was the only feasible option available to repair Chavez's plane. Straight Flight affirmatively revoked its repair offer to Chavez, and Beegles was not a reasonable option because Chavez was unable to ferry his plane to its repair facility. Further, Allianz has also not asserted Beegles was the least expensive or most reasonable means of repair. For these reasons, evidence supports that neither Straight Flight nor Beegles were legitimate options for repair work.

MEMORANDUM DECISION AND ORDER - 16

Additionally, Steve's Aircraft's estimate was based on a physical inspection of the aircraft, unlike Straight Flight's estimate, and included $43,605 in repair costs that Straight Flight apparently missed. (Dkt. 40, ¶ 4). For these reasons, Steve's Aircraft may have been more accurate. Allianz also deferred to Chavez in selecting the repair facility to perform the repairs. Based on these facts, a reasonable jury could conclude Steve's Aircraft was the only viable facility to repair Chavez's plane. In that event, Steve's Aircraft would, by default, be the least expensive and most reasonable means of repair, and Allianz may have breached the policy by refusing to pay the final bill from Steve's Aircraft.

Also, some of Allianz's behavior suggests the repairs performed by Steve's Aircraft were reasonable. First, Allianz's agent, Boetticher, communicated extensively with Chavez and Steve's Aircraft during the aircraft's repair, and Boetticher has testified he does not know if any of the work done by Steve's Aircraft was unnecessary. (Dkt. 40, ¶ 27). Second, Allianz reviewed and paid for many of the repairs conducted by Steve's Aircraft that it now claims are unreasonable. Irvin's report specifically identifies as unreasonable, among other expenses, the number of trips taken by Steve's Aircraft to retrieve the plane, the man-hours expended, and the billings by third-party contractor Midwest Malibu. (Dkt. 28-21). At least part of these specific expenses, however, were included in the first progress billing from Steve's Aircraft for $103,340. Allianz reviewed this progress billing and issued its third "Partial Settlement" payment of $103,340. (Dkt. 38-1, at 55, 57-68). A jury could reasonably infer Allianz paid for the repairs listed in the first progress billing because it considered Steve's Aircraft's services to be reasonable. Based on these genuine issues of material fact, the Court denies Allianz's summary judgment motion.

In opposition to summary judgment, Chavez argues Allianz's three "Partial Settlement" payments preclude Allianz from disputing the reasonableness of the repairs related to these

payments. According to Chavez, each "Sworn Statement in Partial Proof of Loss" settled, once and for all, the related portion of Chavez's insurance claim. Based on this argument, Chavez contends Allianz is barred from challenging the reasonableness of the cost of any repairs related to the settled portions of his claim. Chavez also characterizes Irvin's expert report as an improper attempt to "readjust" portions of Chavez's claim that Allianz already settled. In Chavez's view, the only repairs at issue are the repairs costing $140,616 that were included in the final billing from Steve's Aircraft.

The Court disagrees with Chavez to the extent he suggests Allianz cannot offer evidence to challenge the reasonableness of any repair work for which it has already paid. The "Sworn Statement[s] in Partial Proof of Loss" do not reference particular repairs or billings and provide no language prohibiting either party from challenging the reasonableness of the overall value of Chavez's insurance claim. As such, the settlement payments do not, as a legal matter, restrict Allianz from arguing what constituted the overall least expensive and most reasonable means of repair. Because the issue of what constituted the least expensive and most reasonable means of repair is a question of fact, Allianz may use the partial settlement payments as evidence in this regard. As already explained, a reasonable jury could view Allianz's third settlement payment as a condonation or approval of the work done on Chavez's plane and, consequently, as evidence Steve's Aircraft was the least expensive and most reasonable means of repairing it. In sum, because there is evidence in the record to support a finding that Allianz did not pay for the least expensive and most reasonable means to repair Chavez's plane, a genuine dispute of material fact remains as to whether Allianz breached the insurance policy.

### b. *Allianz has waived its right to seek an appraisal.*

Allianz argues Chavez's breach of contract claim is contractually barred because he has not complied with the appraisal process outlined in the insurance policy. The relevant provision of the policy provides Allianz "does not have to pay, and [Chavez] does not have the right to sue on this policy, unless all of [the policy's] terms have been fully complied with . . . ." (Dkt. 26-3, at 25). The term Allianz argues Chavez has not complied with is the "Appraisal of Loss" provision, which states:

> If the Named Insured and the Company fail to agree as to the amount of loss, each shall, upon written notice to the other, hire at its own expense an independent aircraft appraiser. The appraisers will then agree on a knowledgeable and neutral umpire. If they cannot agree on the umpire in fifteen (15) days, a Judge of the county of the pending appraisal will appoint the umpire. Agreement by any two of these three shall determine the amount of loss. The Named Insured and the Company will share the umpire's cost equally. But this clause shall not deprive or waive any rights of the Company.

(*Id.*) (emphasis omitted). Allianz suggests the insurance policy precludes this lawsuit because Chavez did not first attempt to resolve the parties' dispute via the policy's appraisal provision. According to Allianz, the breach of contract claim should be dismissed or, alternatively, proceedings in this case should be stayed to allow the parties time to seek an appraisal. In response, Chavez does not dispute the appraisal provision would normally govern the parties' dispute; instead, he contends Allianz has waived any right to have this dispute resolved via the insurance policy's appraisal provision by waiting until now to raise the issue. The Court agrees with Chavez.

The Federal Arbitration Act governs any arbitration agreement in contracts "evidencing a transaction involving commerce." *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015) (quoting 9 U.S.C. § 2). "For any arbitration agreement within the coverage of the FAA, the court is to make the arbitrability determination by applying the federal substantive law of arbitrability, absent clear and unmistakable evidence that the parties agreed to apply non-federal arbitrability

law." *Brennan*, 796 F.3d at 1129 (cleaned up). Because the insurance policy here is silent as to what law governs the appraisal provision, federal law applies.

In determining whether a contractual provision constitutes arbitration for purposes of the FAA, federal courts refer to the relevant state law. *Portland GE v. U.S. Bank Trust N.A.*, 218 F.3d 1085, 1086 (9th Cir. 2000) ("[B]ecause the FAA neither defines arbitration nor spells out whether the term arbitration includes appraisal, we look to state law."). Although the Idaho Supreme Court has never "decide[d] what practical distinction, if any, there may be between an appraisal and arbitration[,]" Idaho law still views appraisal provisions as a form of arbitration. *See Inland Group of Cos. v. Providence Wash. Ins. Co.*, 985 P.2d 674, 679 n.1 (Idaho 1999); *Botai v. Safeco Ins. Co.*, No. 2:14-CV-00445-EJL-REB, 2015 WL 4507486, *2-3 (D. Idaho July 24, 2015). Thus, in this case, the Court considers the appraisal provision to be a form of arbitration covered by the FAA.

The FAA makes arbitration agreements, like the appraisal provision here, "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See Kindred Nursing Ctrs. Ltd. v. Clark*, 581 U.S. 246, 251 (2017) (quoting 9 U.S.C. § 2). If a party moves to compel arbitration, a court must generally grant the motion if it determines the parties agreed to arbitrate and the agreement covers the dispute. *See Brennan*, 796 F.3d at 1130. But "[a] court may invalidate an arbitration agreement based on generally applicable contract defenses." *Kindred Nursing Ctrs. Ltd.*, 581 U.S. at 251 (internal quotation marks and citation omitted). This includes the doctrine of waiver. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417  (2022); *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019).

"Under federal law, waiver is the intentional relinquishment or abandonment of a known right." *Newirth*, 931 F.3d at 940 (internal quotation marks and citation omitted). A party seeking to prove the right to compel arbitration has been waived must show "(1) knowledge of an existing

right to compel arbitration [and] (2) acts inconsistent with that existing right." *Hansber v. Ulta Beauty Cosms., LLC*, 640 F. Supp. 3d 947, 954 (E.D. Cal. 2022). The party opposing arbitration need not show it would be prejudiced by arbitration. *See Morgan*, 596 U.S. at 417. Additionally, under the second element, "a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth*, 931 F.3d at 941.

In this case, Allianz has waived its right to compel arbitration. First, counsel for Chavez contends Allianz considered filing a motion to compel arbitration earlier in this litigation but ultimately never did. (Dkt. 38, ¶¶ 2-3). Allianz does not dispute this contention. Allianz was also reminded of its right to arbitrate again during Heinz's deposition in July 2023. (*Id.*, at 11). These facts establish Allianz had knowledge of its right to compel arbitration. Second, despite having knowledge it could move to arbitrate, Allianz (1) intentionally did not file a motion to compel arbitration and, instead, (2) chose to actively litigate the merits of this case by moving for summary judgment. Thus, Allianz has acted inconsistently with its right to arbitrate. Accordingly, because Allianz has waived its right to compel arbitration, the Court will deny its motion for summary judgment on Chavez's breach of contract claim.

### 2.  Bad Faith Insurance Claim

The Court, however, concludes Chavez's bad faith insurance claim does not survive summary judgment. "[I]nsurance companies have a duty to act in good faith with their insureds, and . . . this duty exists independent of the insurance contract and independent of statute." *White v. Unigard Mut. Ins. Co.*, 730 P.2d 1014, 1016 (Idaho 1986) (emphasis and citation omitted). "An insured may recover in tort where its insurer unreasonably and in bad faith denies or withholds

payment of a valid claim." *McGilvray v. Farmers New World Life Ins. Co.*, 28 P.3d 380, 386 (Idaho 2001) (citation omitted). To establish a bad faith insurance claim, a plaintiff must show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 832 (Idaho 2002) (citation omitted).

Regarding the second element, "[a]n insurer does not act in bad faith if it challenges the validity of a 'fairly debatable' claim." *McGilvray*, 28 P.3d at 386 (citation omitted). An insured's claim is fairly debatable if there is "a reasonable dispute or legitimate question over the eligibility, amount or value of the claim." *Cedillo v. Farmers Ins. Co.*, 408 P.3d 886, 892 (Idaho 2017). The insured bears the burden of showing the claim was not fairly debatable. *See Robinson*, 45 P.3d at 833.

Here, the parties dispute the value of Chavez's insurance claim. As already explained, under the policy's terms, the true value of Chavez's insurance claim is equal to the "least expensive and most reasonable means" of repairing his plane. To survive summary judgment on his bad faith insurance claim, Chavez must show a genuine dispute of material fact exists over whether Allianz could legitimately question or reasonably dispute what constituted the least expensive and most reasonable means for repair. In other words, Chavez must show it was not fairly debatable that Allianz did not pay the least expensive and most reasonable means of repair. The Court concludes he cannot do so for two primary reasons.

First, there are sufficient undisputed facts to support Allianz's belief that Steve's Aircraft was not the most reasonable means of repair. For instance, Steve's Aircraft was not certified as a Part 145 repair facility, unlike Straight Flight and Beegles. (Dkt. 38-2, ¶ 2, Dkt. 32-4, ¶ 22). The

original estimate from Steve's Aircraft was also higher than those provided by Straight Flight and Beegles, and Steve's Aircraft increased that estimate on several occasions. The total cost to repair the aircraft was significantly higher than what Straight Flight estimated. These facts suggest it was not unfair for Allianz to dispute the reasonableness of the work done by Steve's Aircraft and, consequently, the value of Chavez's insurance claim.

Second, because the insurance policy did not require Allianz to pay for improvements to the aircraft that constituted betterment, Allianz reasonably disputed the value of Chavez's claim. Some of the parties' dispute was regarding that portion of the total repair cost constituting betterment. In October 2019, Straight Flight estimated Chavez would be personally responsible for $145,502 of betterment. (Dkt. 28-5, at 3). Of course, Chavez disagreed with this estimate, and the parties continued to dispute what amount of the total repair cost was betterment. (*Id.*) Now, Chavez submits $62,471 of the total repair cost is betterment. (Dkt. 38-1, at 103). But there is no explanation and no expert testimony—at least not in the record—to justify Chavez's calculation as opposed to some higher figure. For these reasons, the Court cannot conclude it was unfair for Allianz to question the value of Chavez's insurance claim based on the parties' reasonable dispute over betterment. Thus, the Court concludes the value of Chavez's insurance claim was fairly debatable.

Allianz's settlement offers do not contradict this conclusion. Chavez characterizes Allianz's settlement offer for $55,941 as an undisputed amount owed to him and, therefore, as an amount that is not fairly debatable. Chavez cites *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 233 P.3d 1221, 1244 (Idaho 2010), and *Inland*, 985 P.2d 674, for the proposition that an insurer which conditions or delays payment of an undisputed portion of insurance proceeds violates the

duty of good faith it owes to the insured. (Dkt. 39, at 16). According to Chavez, Allianz acted in bad faith by conditioning payment of $55,941 in exchange for release of Chavez's insurance claim.

The Court disagrees. Allianz's settlement offers were just that—offers to settle Chavez's insurance claim at a compromised amount. They were not a concession by Allianz that it owed an undisputed sum. Nor do *Weinstein* or *Inland* suggest otherwise. In *Weinstein*, the insurer erroneously believed it was not required to make *any* payments to its insured until the entire claim had been settled. 233 P.3d at 1241. Likewise, in *Inland*, the insurer never paid an amount its own adjuster determined was owed under the policy, and, importantly, this amount "was not a settlement offer." 985 P.2d at 677. Thus, the insurers in both *Weinstein* and *Inland* acted in bad faith because it could not be "genuinely disputed" the insurers owed amounts under their insurance policies. *Weinstein*, 233 P.3d at 1244 (quoting *Inland*, 985 P.2d at 681).

By contrast, Allianz's settlement offers are distinguishable from the undisputed amounts in *Weinstein* and *Inland* because Allianz had already paid Chavez a significant amount under the policy and, as explained, the remaining amount, if any, was fairly debatable. Indeed, at the time Allianz made its settlement offer in June 2021, it had already paid Chavez for most of the repair cost, and the only evidence in the record indicates its offer in June 2021 was a "settlement figure." (Dkt. 28-12, at 1). Allianz also based its $54,583 and $55, 941 settlement offers, in part, on Straight Flight's repair estimate. (Dkt. 28-4, at 14). As such, these offers were based on "guesses and estimates," and any remaining amount owed to Chavez was still fairly debatable. *Franco v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 3745816, at *6 (D. Idaho Aug. 7, 2018). Accordingly, the Court will grant summary judgment to Allianz on Chavez's bad faith insurance claim.

## C.      Punitive Damages

Finally, the Court considers Chavez's motion to amend his complaint to add a claim for punitive damages.[4] "It is well established that punitive damages are unavailable in routine, ordinary breach of contract cases, however, this 'should not be construed as a blanket prohibition against punitive damages in breach of contract claims.'" *Thurston Enters. v. Safeguard Bus. Sys.*, 435 P.3d 489, 505 (Idaho 2019) (quoting *Myers*, 95 P.3d at 985). "Numerous situations arise where the breaking of a promise may be an extreme deviation from standards of reasonable conduct, and, when done with knowledge of its likely effects, may be grounds for an award of punitive damages." *Id.* (cleaned up). But "while punitive damages may be recovered in a contract action, they are not favored in the law and therefore should be awarded only in the most compelling circumstances; they should be awarded cautiously and within narrow limits." *Cuddy Mtn. Concrete v. Citadel Constr.*, 824 P.2d 151, 158 (Idaho Ct. App. 1992).

In the context of a breach of contract action, courts generally consider oppressive business practices as well as five additional factors in determining whether the breaching party's conduct was an extreme deviation from standards of reasonable conduct:

> In addition to oppressive behavior in a business context, there are other factors which play a determinative role in deciding whether there is substantial evidence of an extreme deviation from standards of reasonable conduct: (1) the presence of expert testimony; (2) whether the unreasonable conduct actually caused harm to the plaintiff; (3) whether there is a special relationship between the parties, as in the *Garnett* insured-insurer relationship; (4) proof of a continuing course of oppressive conduct; and (5) proof of the actor's knowledge of the likely consequences of the conduct.

---

[4]      In relation to the motion for punitive damages, Allianz has moved to strike (Dkt. 34) certain portions of Chavez's reply brief (Dkt. 31) that rely on declarations not filed concurrently with Chavez's motion. Allianz argues the Declarations of Greg Chavez and Steve Culbertson (Dkts. 31-2, 31-3) introduce new facts to support Chavez's motion for punitive damages and, therefore, violate the Court's Local Rules because they were not submitted in conjunction with the original motion. *See* Dist. Idaho Loc. Civ. R. 7.1. Because the Court will ultimately deny the motion for punitive damages on the merits, it does not separately address the motion to strike and denies it as moot.

*Id.* at 160-61.

Considering these factors and viewing the evidence in the light most favorable to Chavez, the Court concludes Allianz's conduct does not amount to an extreme deviation from standards of reasonable conduct. Admittedly, this case involves an insured-insurer relationship, and Allianz undoubtedly knew its refusal to pay for the final billing from Steve's Aircraft would harm Chavez by forcing him to cover the outstanding $140,616 balance owed. Chavez, however, has not provided any expert testimony that Allianz's behavior was an extreme deviation from standards of reasonable conduct by an insured. In fact, the only expert testimony in the record proffered by Allianz supports the opposite conclusion. There is also no evidence in the record of a course of oppressive conduct by Allianz. To the contrary, it is undisputed Allianz has, to date, paid for most of the repairs needed for Chavez's plane. Allianz has paid Chavez $587,649, most of which came early in the life of Chavez's claim and allowed him to begin repair work on his aircraft. It was not until June 2021—more than two years into the insurance claim—that Allianz refused to pay the remaining $140,616 owed to Steve's Aircraft. Even assuming without deciding that Allianz still owes Chavez $143,373, this amount is approximately 20 percent of what it ultimately owed under the policy. While not insignificant, this amount does not suggest Allianz has maintained an oppressive course of conduct against Chavez.

Moreover, as explained above, the value of Chavez's insurance claim was fairly debatable based upon the parties' reasonable dispute over betterment to the plane and whether Steve's Aircraft was the least expensive and most reasonable means to perform repairs. While Chavez may have suffered harm from Allianz's alleged breach, this harm was not necessarily the result of unreasonable conduct by Allianz. Accordingly, the Court does not conclude Allianz's behavior in

this case was an extreme deviation from standards of reasonable conduct, and consequently, there are not sufficient facts to support an award of punitive damages.

Chavez's arguments to the contrary are unavailing. Chavez argues punitive damages are appropriate when an insurer conditions payment of an undisputed amount based on a general release of the insured's claim. (Dkt. 26-1, at 2) (citing *Weinstein*, 233 P.3d at 1244). Chavez, again, points to Allianz's unpaid settlement offer of $55,941 as evidence it withheld an undisputed amount. As already explained, Allianz's settlement offer did not constitute an undisputed sum owed to Chavez and, therefore, does not support an award of punitive damages.

Chavez also argues punitive damages are warranted based on Allianz's alleged violations of Idaho's Unfair Claim Settlement Practices Act, Idaho Code § 41-1329. Section 41-1329 lists several "[u]nfair claim settlement practices," which when done "intentionally, or with such frequency as to indicate a general business practice shall be deemed to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." This statute "is a legislative enactment establishing insurance industry standards." *Weinstein*, 233 P.3d at 1235. While the statute does not provide a private right of action to an insured for an insurer's statutory violations, it can be used as evidence of insurance industry standards for purposes of punitive damages. *Id.*

Chavez contends Allianz has specifically violated subsections (1), (6), (7), and (14) of section 41-1329. However, for reasons already provided above, there is little, if any, evidence Allianz violated subsections (1), (6), and (14) of section 41-1329. Additionally, while there is evidence to support Allianz violated subsection (7), this violation does not warrant punitive damages under the circumstances of this case. Subsection (7) provides that it is a unfair insurance practice to "[c]ompel[] insureds to institute litigation to recover amounts due under an insurance

policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds." Idaho Code § 41-1329(7). Chavez has testified that Mr. Heinz told him in June 2021 he would have to initiate litigation if he did not accept Allianz's settlement offer. Were Chavez to ultimately succeed on his breach of contract claim at trial, a reasonable jury could conclude based on this evidence that Allianz violated section 41-1329(7). This possible result alone, however, does not suffice to change the Court's conclusion, based on its earlier analysis, that there is not a reasonable likelihood that Chavez can prove a claim for punitive damages at trial by clear and convincing evidence. For this reason, the Court will deny Chavez's motion to amend his complaint to add a claim for punitive damages.

## IV.  ORDER

**IT IS ORDERED that:**

1.       The Motion to Amend to State a Claim for Punitive Damages (Dkt. 26) is **DENIED**.

2.       Defendant Allianz Global Risks US Insurance Company's Motion for Summary Judgment (Dkt. 32) is **GRANTED in part** as to Chavez's bad faith insurance claim in Count II of the complaint and **DENIED in part** as to the breach of contract claim in Count I of the complaint.

3.       Defendant Allianz Global Risks US Insurance Company's Motion in Limine to Exclude Expert Testimony (Dkt. 33) is **DENIED WITHOUT PREJUDICE**.

4.       Defendant Allianz Global Risks US Insurance Company's Motion to Strike (Dkt. 34) is **DENIED as moot**.

DATED: April 24, 2024

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge